In re James W. KEENAN, dba Data Property Services, Debtor.

Bankruptcy No. 96–00871–B11.

United States Bankruptcy Court, S.D. California.

Sept. 18, 1996.

Jeffrey B. Gardner, Saxon, Barry, Gardner & Kincannon, Newport Beach, CA, for Debtor.

Ali M.M. Mojdehi, Baker & McKenzie, San Diego, CA, for Unsecured Creditors' Committee.

Dean T. Kirby, Jr., Geraldine A. Valdez, Hovey, Kirby, Thornton & Hahn, San Diego, CA, for Ms. Satten.

Mary M. Testerman, Office of the United States Trustee, Department of Justice, San Diego, CA, for U.S. Trustee's Office.

ORDER ON DEBTOR'S MOTION TO
ESTIMATE THE SATTEN
CLAIM

PETER W. BOWIE, Bankruptcy Judge.

Well prior to filing bankruptcy, Mr. Keenan (debtor) filed suit in state court against Ms. Satten. She filed a crossclaim, alleging fraud and other causes of action. After an extensive jury trial, the jury returned verdicts in favor of Ms. Satten and against Mr. Keenan. The original verdict totalled over $21,000,000, including $3,000,000 in punitive damages. Post-trial motions were filed, and the court reduced the verdict by $3,162,462. The total of the remaining judgment, plus attorneys' fees and costs is over $18,000,000. One week later, on or about December 20, 1995 debtor and his wife filed a notice of appeal of the state court judgment. One month later, on January 22, 1996 Mr. Keenan, only, filed his petition in bankruptcy under Chapter 11.

Debtor now asks that this Court estimate the amount of Ms. Satten's claim pursuant to 11 U.S.C. § 502(c). Debtor argues that because California denies issue preclusive effect to a judgment pending appeal, the claim of the creditor is necessarily contingent and unliquidated. Further, debtor argues that he wants to reorganize promptly, and fixing Ms. Satten's claim through the state court appellate process will unnecessarily delay reorganization. Debtor then attacks what he considers to be multiple errors in the judg-ment reached by the jury, as modified by the trial court.

This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

*DISCUSSION*

Section 502(c) of Title 11, United States Code, provides in pertinent part:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case....

Resort to § 502(c) is only appropriate, however, when the claim is either contingent or unliquidated. *In re Rhead*, 179 B.R. 169, 172 (Bankr.D.Az.1995); *In re Casey*, 198 B.R. 910, 916 (Bankr.S.D.Cal.1996); *Matter of Continental Airlines*, 981 F.2d 1450, 1461 (5th Cir.1993).

As already noted, debtor's argument that Ms. Satten's claim is contingent is premised on the proposition that California state law would not apply the doctrine of issue preclusion to the elements of the judgment so long as an appeal was pending or the time to take an appeal had not run. This Court recognizes that California courts would deny issue preclusion to a California state court judgment pending on appeal. But the inapplicability of issue preclusion does not make a claim based upon a trial court verdict either contingent or unliquidated. *In re Casey*, 198 B.R. 910 at 916.

The Bankruptcy Code does not define the terms contingent or unliquidated. *In re Nicholes*, 184 B.R. 82, 88 (9th Cir. BAP 1995). However, case law has provided some definition for us. It is generally settled that "if all events giving rise to liability occurred prior to the filing of the bankruptcy petition", the claim is not contingent. *Id.; In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987); *In re Dill*, 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd*, 731 F.2d 629 (9th Cir.1984); *In re*

*Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991); *U.S. v. Verdunn,* 89 F.3d 799, 801 at n. 7 (11th Cir.1996).

In his Supplemental Brief, the debtor has cited to the decision of *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr. S.D.Tx.1980) for the statement:

> In the case of a tort claim for negligence, the parties at the time of the alleged negligent act would be presumed to have contemplated that the alleged tort feasor would be liable only if it were so established by a competent tribunal. Such a tort claim is contingent as to liability until a final judgment is entered fixing the rights of the parties.

To the extent the court in that case was declaring that a tort claim is contingent within the meaning of § 502(c) until a final judgment is entered, this Court, and most others, disagrees. If all the events upon which a future determination of liability could be based have occurred prepetition, then the claim is not contingent, even though liability has yet to be fixed. That point was most recently reiterated in *In re Nicholes,* 184 B.R. 82, 89 at n. 7 (9th Cir. BAP 1995). There, the court wrote:

> A tort claim ordinarily is not contingent as to liability; the events that gave rise to liability to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code. (Citation omitted.)

Accord, *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991); *In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd* 731 F.2d 629 (9th Cir.1984).

■ Ms. Satten's claim is predicated in smaller part on a breach of contract, and in larger part on claims of fraud. All of the events upon which liability could be imposed occurred prepetition. Accordingly, her claim is not contingent, and is not amenable to estimation under § 502(c) on that ground.

■ Section 502(c) recognizes as an alternate ground for estimation that a claim is

unliquidated. The term liquidated has also acquired a working definition through case law. In *In re Fostvedt,* 823 F.2d 305 (9th Cir.1987), the debtor was jointly and severally liable with three other persons on two promissory notes. He argued that the claim was unliquidated because how much of the total debt he would have to pay depended on how much his co-obligors paid. The court disagreed. In addressing the debtor's argument, the court stated:

> First, we agree with the Bankruptcy Appellate Panel of this court that the question whether a debt is liquidated turns on whether it is subject to "ready determination and precision in computation of the amount due." (Citation omitted.)

823 F.2d at 307. Some courts have made the shorthand statement:

> Thus, debts arising from a contract are generally liquidated. (Citation omitted.) On the other hand, debts based on unlitigated tort and quantum meruit claims are generally unliquidated because damages are not based on a fixed sum. (Citations omitted.)

*In re Nicholes,* 184 B.R. 82, 89 (9th Cir. BAP 1995).

A more extensive consideration of the question was made in *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991). There, the court wrote:

> The question now turns to the issue of liquidation. In *In re Sylvester,* 19 B.R. 671, 673 (9th Cir. BAP 1982) the court made the observation in *dicta* that "contract debts (even though disputed) are considered liquidated and tort claims are not." That statement is generally correct, but must be taken in its proper context. As the *Sylvester* court more specifically explained:
>
> > The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due.... Some cases have stated the test as to whether the amount due is capable of ascertainment by reference to an agreement or by simple computation. *Id.*

Therefore, whether a debt is liquidated or not ... does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation.

In the instant case, the major component of Ms. Satten's claim sounds in tort. Had the case not proceeded to trial and judgment, it might have been difficult to conclude that the amount of the claim was susceptible to ready determination because of the multiple components of the damages portion of the fraud claims. However, the state court case did proceed to judgment based on a jury verdict, and as of the date of the filing of the bankruptcy was readily calculable. The claim is therefore liquidated.

■ The remaining question regarding the liquidated status of the claim is whether the debtor, by scheduling the claim as disputed, or by filing a claim objection, can make an otherwise liquidated claim unliquidated for purposes of § 502(c). The courts which have considered the question have concluded that a readily calculable claim remains liquidated regardless of whether it is disputed. In *In re Loya*, 123 B.R. 338, 340–41 (9th Cir. BAP 1991), the court wrote:

> For the same reason, whether a debt is liquidated does not depend on whether it is disputed. Thus, a disputed debt which is capable of ready determination is liquidated.

The Bankruptcy Appellate Panel reached the same conclusion in *In re Nicholes*, 184 B.R. 82, 91 (1995). The court wrote:

> Construing *Sylvester* with [*In Re*] *Wenberg* [94 B.R. 631 (9th Cir. BAP 1988) ] and *Loya*, we hold that the fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated. So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated ..., regardless of any dispute.

Accord, *U.S. v. Verdunn*, 89 F.3d 799, 802 at n. 9 (11th Cir.1996).

Section 502(c) contemplates that a bankruptcy court will estimate a claim that is either contingent or unliquidated if failure to do so would unduly delay administration of the bankruptcy case. Estimation, in turn, contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the amount of the debt. In either instance, § 502(c) presupposes that a nonbankruptcy court has not already done so. It would stand comity on its head and misuse the limited scope of § 502(c) for a bankruptcy court to proceed as if a nonbankruptcy court or jury had not acted at all when a case has already proceeded to judgment. Yet that is what the debtor asks this Court to do.

Because Ms. Satten's claim proceeded to judgment in state court, her claim is neither contingent nor unliquidated for purposes of 11 U.S.C. § 502(c). That is so despite the fact that debtor has appealed the judgment, and despite the peculiarity of California law that keeps a judgment non-final for issue preclusion purposes so long as an appeal is pending.

If § 502(c) were applicable to this case, because of the peculiarities of California law or otherwise, it would not change the end result. As stated above, the judgment was reached after a fully adjudicated jury trial. Without conducting a full retrial this Court could not make a more accurate estimate of a claim than took place during the state court trial. This Court would thus estimate the claim in the amount of the judgment, as modified.

■ There is an additional reason why resort to § 502(c) may be improper after a judgment has been rendered by a state court. The Court invited supplemental briefing on the applicability of 28 U.S.C. § 1257 and the *Rooker–Feldman* doctrine, so called after the names of two United States Supreme Court decisions, *Rooker v. Fidelity Trust*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The essence of both the statute and the decisions is that lower federal courts do not have jurisdiction

to sit in appellate review of decisions of state courts, except in habeas corpus proceedings.

In the pending motion to estimate Ms. Satten's claim, debtor's whole bases for the estimation of both liability and amount of the claim are attacks on alleged errors in the judgment. Yet debtor says in his Supplemental Brief that he "is not attempting to modify, amend, annul or attack the underlying state court judgment." However, his whole argument for why the Satten claim should be estimated at zero or some other amount less than the amount set by the jury focuses on claims of error in the state court judgment.

At the same time as he attacks the state court judgment to argue why various components of the damage award are not valid components of Ms. Satten's claim, debtor asserts he is not attacking the state court judgment, and that its validity will be determined on appeal in the state courts. Yet he wants the state court judgment to be ignored, and for this Court to estimate under state law what a state court or jury would find the claim was worth, so that the debtor can confirm a plan to provide for allowed claims, and to receive a discharge as to all other claims, or portions of claims not paid through the plan. Ms. Satten is the major creditor in this case, and if her claim is allowed in an amount even approximating the amount of the judgment, debtor has insufficient assets to pay it. In this Court's view, debtor's argument is disingenuous. Debtor really is seeking to have a second try at his defense to the state case. He wants this Court to substitute its judgment for the judgment already reached by a state court jury and judge. The *Rooker–Feldman* doctrine precludes such a result.

Nor is it availing to debtor that under California law the state judgment is not final because it is on appeal. In *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 at n. 3 (9th Cir.1986), the court wrote:

> We agree with the Second and Fifth Circuits that the Feldman doctrine should apply to state judgments even though state court appeals are not final.

See, also, *Goetzman v. Agribank, FCB,* 91 F.3d 1173 (8th Cir.1996); *Hale v. Harney,* 786 F.2d 688, 691 (5th Cir.1986); *In re·Morrow,* 189 B.R. 793, 810 (Bankr.C.D.Ca.1995).

As *Rooker–Feldman* makes clear, using the claims estimation process as a mechanism for de novo or appellate review of state court judgments does violence to the roles and relationships of the federal and state judiciaries, and could create unwarranted friction. Such a mechanism, if it existed, also might lead to forum shopping in an inappropriate way.

### CONCLUSION

For all the foregoing reasons, the Court concludes that Ms. Satten's claim is neither contingent nor unliquidated, and therefore is not eligible for estimation pursuant to 11 U.S.C. § 502(c). Further, the Court finds that by enactment of § 502(c), the Congress did not intend to authorize bankruptcy courts to, de facto, conduct an appellate review of a state court judgment, review of which would otherwise violate 28 U.S.C. § 1257 and the *Rooker–Feldman* doctrine.

Accordingly, debtor's motion to estimate the claim of Ms. Satten is denied.

IT IS SO ORDERED.