216 B.R. 19 (1997)
In re AUDRE, INC.; Audre Recognition Systems, Inc., Debtors.
AUDRE, INC.; Audre Recognition Systems, Inc., Appellants/Cross-Appellees,
v.
Catherine CASEY; Ronald K. Van Wert, a Professional Corporation; Steven E. Briggs, Appellees/Cross-Appellants.
Steven Sanford; Steven Greenberg, Appellees.
BAP Nos. SC-96-2005-ROMO, SC-96-2009-ROMO, SC-96-2039-ROMO, Bankruptcy Nos. 95-10048-B11, 95-10046-B11.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted September 18, 1997.
Decided November 10, 1997.
*20 *21 *22 Alan Van Derhoff, San Diego, CA, for Audre, Inc., Audre Recognition Systems.
Ronald K. Van Wert, Costa Mesa, CA, for Catherine Casey.
Before: RUSSELL, OLLASON, and MONTALI,[1] Bankruptcy Judges.

OPINION
RUSSELL, Bankruptcy Judge.
Creditors filed proofs of claim against the debtors, a public company and its wholly-owned subsidiary. The claim against the parent company was based upon a state court judgment for fraud, conversion and breach of fiduciary duty; the proof of claim against the subsidiary was based upon the same facts, but without an underlying judgment. The debtors moved to have the claims against them disallowed or estimated as $0, contending that the judgment was void ab initio, and also moved for summary judgment on the issue.
The bankruptcy court denied the motion to disallow or estimate the claim as $0 and the motion for summary judgment as to the parent company by finding that (1) the claim was neither contingent nor unliquidated; and (2) estimation or disallowance would be an improper federal collateral attack on a state court judgment in violation of the Rooker-Feldman doctrine. As to the subsidiary, the bankruptcy court found that it was an independent entity which was not liable to the creditors. The bankruptcy court granted the motion to disallow the claim as to the subsidiary.
The parent company has appealed the state court judgment to the State of California Court of Appeals but the matter has yet to be heard by that court. The parent company appeals to the BAP the denial of its motion to disallow or estimate the claim as $0 on the basis that the Rooker-Feldman doctrine does not apply to judgments that are void, not final, and not from the highest state court. The creditors filed a cross-appeal to the BAP of the bankruptcy court's decision to grant the motion to disallow the claim as to the subsidiary.
We AFFIRM the bankruptcy court's denial of the motion to disallow or estimate the claims as $0 as to the parent company. We AFFIRM the bankruptcy court's denial of the motion for summary judgment as to the parent company. We also AFFIRM the bankruptcy court's granting of the motion to disallow the claim as to the subsidiary.

I. FACTS
Audre Recognition Systems ("ARSI") is a British Columbia corporation which develops and markets software and related systems that facilitate the conversion of documents into computer usable information. It filed a chapter 11[2] case on September 18, 1995. Its entire business activities and operations are conducted through its wholly-owned subsidiary, Audre, Inc. ("Audre"), a ten-year-old California corporation. Thomas Casey ("Thomas") was at all relevant times the Chief Executive Officer of Audre and ARSI. He and his former wife Catherine ("Catherine") have owned significant amounts of stock in both of the corporations.
*23 In October of 1987, Thomas and Catherine's marriage dissolved. The Superior Court of the State of California, Family Division ("Family Court") awarded Catherine 240,100 shares of Audre stock as part of the October 8, 1987 judgment of dissolution. Due to a corporate merger that was commenced four months prior to the marital dissolution,[3] these shares were converted to 352,650 shares of ARSI stock. In December of 1987, Thomas transferred the ARSI shares into Catherine's name but did not deliver the stock certificate to her.
In September of 1989, a creditor of Catherine's levied on the stock certificate, which was still in Thomas' possession. As a result of the creditor's levy, a marshal's sale of the stock certificate was held on September 11, 1989, at which time Thomas purchased the certificate for $6,676. Thomas then directed ARSI's Canadian transfer agent to transfer the shares back into his (Thomas') name. The agent required ARSI to indemnify him for any harm which might arise out of the transferring of the shares, and ARSI complied with the request. In March of 1992, ARSI issued "Earn-Out Shares" in the names of the former shareholders of Audre who had signed the share-purchase agreement (with Ceaser)[4] and tendered their Audre shares. Earn-Out Shares were issued to Thomas but not to Catherine.
On Catherine's motion, on March 4, 1993, ARSI was joined as a party-in-interest in the marital dissolution proceedings in the Family Court on the ground that ARSI was a third party which had a claim in or controlled property that was subject to being divided by the Family Court. On March 25, 1993, Catherine filed a complaint against Thomas and ARSI for fraud, conversion, and breach of fiduciary duty with regard to the ARSI stock transactions. ARSI, Thomas, and Catherine stipulated to the consolidation for trial of all matters regarding Thomas and ARSI, including the tort actions. On September 14, 1995, the Family Court entered an $11.5 million judgment against Thomas and ARSI, only, based on those claims. The parties did not raise the issue of the lack of jurisdiction at trial or in their trial and post-trial briefs. The Family Court judgment is presently on appeal by Thomas and ARSI to the California District Court of Appeal. No relief from stay has ever been sought or obtained in ARSI's chapter 11 case to continue with this appeal.
On September 18, 1995, four days after the entry of the Family Court judgment, Thomas, ARSI, and Audre each filed separate Chapter 11 cases. Thomas' case was later dismissed and was the subject of a separate decision by this Panel (BAP No. SC-96-1678-ROMo) which we are issuing concurrent with this decision.[5] Catherine filed an identical proof of claim in both the ARSI and Audre chapter 11 cases in the amount of $11.5 million based on the Family Court judgment (collectively the "claims").[6] On January 23, 1996, ARSI and Audre each filed motions to disallow the claims on the ground that the Family Court judgment was void ab initio because the Family Court did not have subject matter jurisdiction over the tort causes of action which formed the basis of the judgment. Alternatively, ARSI and Audre requested that the bankruptcy court estimate *24 the claims as $0. The bankruptcy court conducted a hearing on the two motions on June 21, 1996. After a hearing, the bankruptcy court took the matter under submission.
On June 17, 1996, ARSI and Audre filed a joint[7] motion for summary judgment with respect to the motions to disallow the claims. The bankruptcy court conducted a hearing on the summary judgment motion on July 29, 1996. During the course of the hearing, the parties argued the applicability of the Rooker-Feldman doctrine to the issue of whether the bankruptcy court had jurisdiction to hear the motions to disallow the claims or estimate them as $0, on the theory that it might be an improper federal court collateral attack on a state court judgment. At the conclusion of the hearing, the bankruptcy court requested additional briefing on the effect of the Rooker-Feldman doctrine and took the motion for summary judgment under submission.
On November 6, 1996, the bankruptcy court issued a published opinion on the motions to disallow the claims or, in the alternative, to estimate the claims as $0. See In re Audre, Inc., 202 B.R. 490 (Bankr.S.D.Cal. 1996). With respect to Audre, the bankruptcy court granted the motion to disallow the claims on the grounds that the creditors had failed to meet their burden in proving that there was any basis for Audre to be liable to them on the Family Court judgment when Audre was not a party to that proceeding. The bankruptcy court found that although Audre was a wholly-owned subsidiary of ARSI, it was nevertheless an independent entity from ARSI. The bankruptcy court further highlighted the fact that Audre was not a party to the Family Court judgment.
Thus, the bankruptcy court concluded as to Audre that the claims were at best contingent and unliquidated but that in reality there was no basis for asserting that Audre had any liability for them. The bankruptcy court treated Audre's motion to disallow the claim as a claim objection and found that the creditors had failed to meet their burden of proof as to Audre's liability. The creditors cross-appeal the bankruptcy court's granting of the motion to dismiss as to Audre.
With respect to ARSI, the bankruptcy court denied the motion on the grounds that ARSI was precluded from estimation of the claims and that the Family Court judgment could not be collaterally attacked by use of either the claims estimation or claims objection process, partly due to the Rooker-Feldman doctrine.
More specifically, the bankruptcy court found that, in regard to ARSI, it would not disallow the claim because it did have subject matter jurisdiction under 28 U.S.C. § 1334 and General Order 312-D of the U.S. District Court for the Southern District of California, and that this was a "core proceeding" under 28 U.S.C. § 157(b)(2)(B). In addition, it concluded that there was a legal and factual basis for imposing the liability as to ARSI.
Further, with respect to estimating the claim as $0, the bankruptcy court asserted that a § 502(c) analysis would be appropriate only when the claim was either contingent or unliquidated. The bankruptcy court held that the claim against ARSI was not contingent because (1) the appeal of the Family Court judgment did not make the decision invalid, and (2) all of the relevant acts occurred pre-petition. The bankruptcy court further held that the claim was not unliquidated because it defined the term to mean "whether it is subject to ready determination" and not just whether it "sounds in tort." Audre, 202 B.R. at 492. The bankruptcy court thus found that the damages were not only susceptible to ready determination but that the matter had already gone to trial. Therefore, the damages were easily calculable and thus were liquidated. It was further noted that a disputed debt that is still capable of determination is liquidated. Id.
The bankruptcy court further found that a § 502(c) analysis would be improper in any event because it would be an impermissible attack on a state court judgment because it violated the Rooker-Feldman doctrine. Id. *25 The bankruptcy court defined the doctrine to mean that a federal district court lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final determinations of state court decisions. It found that the doctrine applied even if a case were on appeal, which was consistent with the policy of avoiding a state/federal rivalry through promoting forum shopping. The bankruptcy court further held that even if it were to estimate the claims based on the Family Court judgment, the claims would have to be estimated in the dollar amount of that judgment. ARSI appeals the bankruptcy court's decision to deny the motion to disallow the claims or estimate them as $0.
At a November 1, 1996 hearing, the bankruptcy court denied ARSI's separate motion for summary judgment on the claims filed against it on account of the Family Court judgment, based on the same reasoning as the motion to disallow the claims discussed above. The bankruptcy court dismissed Audre's identical motion as moot because the claims to which it was addressed had been disallowed. ARSI appeals the bankruptcy court's denial of its summary judgment motion.
On November 12, 1996, Catherine moved the bankruptcy court for reconsideration of the portion of its decision on the motion to disallow or estimate the claim at $0 which disallowed the claim against Audre. She also moved the bankruptcy court for reconsideration of the portion of its decision on the motion for summary judgment which found that the motion as to Audre was redundant.
Both motions for reconsideration were based on what Catherine alleged to have been mistake and excusable neglect on her behalf. Catherine contended that during the course of the bankruptcy court proceedings, her counsel withdrew and that she joined in another creditor's opposition to the motion to disallow or estimate the claims as $0. She contended that the opposition mistakenly asserted that the Audre claim was not before the bankruptcy court.
Catherine further contended that the issue of Audre's liability on the claim was therefore not addressed except at the November 6, 1996 hearing on the summary judgment motion, where her counsel unsuccessfully argued that ARSI and Audre were one corporate entity on an alter ego theory. Catherine concluded that her joinder in the creditor's opposition constituted excusable neglect which justified reconsideration of both the motion to disallow the claims and the motion for summary judgment as to Audre. The bankruptcy court denied both motions for reconsideration. The creditors also cross-appeal the bankruptcy court's denial of Catherine's motions for reconsideration.

II. ISSUES
A. Whether the bankruptcy court erred in denying the motion to disallow the Family Court claim or, in the alternative, to estimate the claim as $0, as to ARSI.
B. Whether the bankruptcy court erred in denying the motion for summary judgment as to ARSI.
C. In the creditors' cross-appeal, whether the bankruptcy court was clearly erroneous in granting the motion to disallow the Family Court claim as to Audre.

III. STANDARD OF REVIEW
The Bankruptcy Appellate Panel reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. In re Burdge, 198 B.R. 773, 776 (9th Cir. BAP 1996). The determination of whether the bankruptcy court had subject matter jurisdiction is reviewed do novo. In re Anderson, 149 B.R. 591, 593 (9th Cir. BAP 1992). The question of whether a debt is contingent or liquidated is an issue involving the interpretation of the bankruptcy code and thus is a question of law subject to de novo review. In re Nicholes, 184 B.R. 82, 86 (9th Cir. BAP 1995). Findings of fact made in summary judgment proceedings are not entitled to a clearly erroneous standard of appellate review. In re United Energy Corp., 102 B.R. 757, 760 (9th Cir. BAP 1989) aff'd, 944 F.2d 589 (9th Cir.1991). Rather, the BAP reviews the granting of summary judgment de novo. In re Circle K Corp., 190 B.R. 370, 372 (9th Cir. BAP 1996). The denial of a motion to reconsider is reviewed on an abuse of discretion standard. In re *26 Ankeny, 184 B.R. 64, 68 (9th Cir. BAP 1995). A decision reviewed for an abuse of discretion will be overturned only if there was a clear error of judgment by the bankruptcy court. In re Basham, 208 B.R. 926, 930 (9th Cir. BAP 1997).

IV. DISCUSSION
A. Whether The Bankruptcy Court Erred In Denying The Motion To Disallow The Family Court Claim, Or In The Alternative, To Estimate The Claim As $0, As To ARSI
1. The Rooker-Feldman doctrine precludes the bankruptcy court from disallowing or estimating the claim as $0
The Rooker-Feldman doctrine, established by two Supreme Court decisions handed down sixty years apart, provides that a federal district court lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final determinations of state court decisions. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). 28 U.S.C. § 1257 provides that the proper court in which to obtain such review is the United States Supreme Court. Feldman, 460 U.S. at 476, 103 S.Ct. at 1311-12.
In Rooker, the U.S. Supreme Court was asked to declare null and void a judgment of a circuit court in Indiana, which was affirmed by the state supreme court. The U.S. Supreme Court rejected the arguments of the aggrieved party who, after pursuing the action through the Indiana state courts, filed suit in the federal district court alleging that the state courts had relied upon an unconstitutional statute. In its decision, the Supreme Court wrote:
Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify [a state court] judgment for errors . . . [t]o do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.
Rooker, 263 U.S. at 416, 44 S.Ct. at 150.
In Feldman, the District of Columbia Court of Appeals had refused to admit Feldman to the District of Columbia bar because he had not graduated from law school, a prerequisite to admission under the District's bar rules. Feldman filed a complaint in federal district court claiming that the refusal of the highest court in the district to admit him to the bar violated his constitutional rights. The Supreme Court held that the federal district court had jurisdiction to determine the constitutionality of the District's bar rule but the district court had no jurisdiction to review Feldman's constitutional challenge to the application of the bar rule. Specifically, the Supreme Court wrote:
The District of Columbia Circuit properly acknowledged that the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings.
Feldman, 460 U.S. at 476, 103 S.Ct. at 1311.
The Supreme Court further stated:
If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision.
Id. at 483 n. 16, 103 S.Ct. at 1316, n. 16.
The Ninth Circuit has held that under the Rooker-Feldman doctrine, the federal district court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings. Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir.1986). The federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions. Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles, 23 F.3d 218, 221 (9th Cir.1994). Further, a constitutional claim is "inextricably intertwined" if the district court must scrutinize *27 not only the challenged rule itself, but the state court's application of the rule. Worldwide Church, 805 F.2d at 892. In addition, "if, in order to resolve the claim, the district court would have to go beyond mere review of the state rule as promulgated to an examination of the rule as applied by the state court to the particular factual circumstances of the case then the court lacks jurisdiction." Id. (emphasis in original). See also Dubinka, 23 F.3d at 222; In re Morrow, 189 B.R. 793, 810 (Bankr.C.D.Cal.1995).
The Rooker-Feldman doctrine has been applied numerous times by bankruptcy courts in the Ninth Circuit, primarily in the context of claims objection and estimation. See e.g., In re Keenan, 201 B.R. 263, 266 (Bankr.S.D.Cal.1996); Morrow, 189 B.R. at 793. In Keenan, the chapter 11 debtor requested estimation of a judgment creditor's claim that arose from a pre-petition state court judgment against him. Prior to filing bankruptcy, a state court found Keenan guilty of fraud and awarded a $21 million judgment against him (this was later reduced by $3.2 million). One week later, Keenan filed a notice of appeal of the state court judgment. One month later, he filed a chapter 11 case and asked the bankruptcy court to estimate the amount of this claim pursuant to § 502(c).
The debtor in Keenan argued that because California denies issue preclusive effect to a judgment pending appeal, the claim of the creditor is necessarily contingent and unliquidated. Keenan, 201 B.R. at 264. Further, the debtor argued that he wanted to reorganize promptly, and that the fixing of the claim through the state court appellate process would unnecessarily delay the reorganization.
The Keenan court found that the claim was neither contingent nor unliquidated. Id. at 266. It concluded that "by enactment of § 502(c), the Congress did not intend to authorize bankruptcy courts to, de facto, conduct an appellate review of a state court judgment, review of which would otherwise violate 28 U.S.C. § 1257 and the Rooker-Feldman Doctrine." Id. at 267.
In Morrow, after the debtor filed a chapter 7 case, the Commissioner of the California Department of Savings and Loan issued a cease and desist order to prevent him from serving as the Chairman of the Board of a bank. Morrow, 189 B.R. at 797. The debtor commenced an adversary proceeding against the commissioner and others seeking, inter alia, declaratory and injunctive relief and damages for violation of the Code's anti-discrimination provision.
The Morrow court found that the automatic stay was not implicated by the commissioner's actions and, thus, the cease and desist order and the state court judgment were not rendered void, but that the judgment lacked res judicata or collateral estoppel effect. Id. at 806. However, under the Rooker-Feldman doctrine, the bankruptcy court concluded that it lacked the subject matter jurisdiction to consider the debtor's claims since to do so would constitute an impermissible appellate review of the state court judgment by a federal trial court. Id. at 810-11.
In the instant case, ARSI argues that the Rooker-Feldman doctrine does not bar the bankruptcy court from estimating its claims because the state court judgment was void ab initio and, alternatively, that the Rooker-Feldman doctrine was not applicable because (1) the Family Court judgment was not from the highest state court, and (2) due to the appeal to the state court of appeals, the judgment was not final.
a. Family Court jurisdiction
In regard to its first contention, ARSI claims that the Family Court was without jurisdiction as to the tort causes of action and, thus, that portion of its judgment was void ab initio. However, provisions in the California Family Code and applicable case law seem to indicate otherwise.[8]
In addition, it is well settled that a California Superior Court is a court of *28 general and virtually unlimited jurisdiction. In re Morrow, 189 B.R. at 803 n. 12 (citing CAL.CIV.PROC. § 410.10 (West 1995), which states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this State or the United States."). The fact that a Superior Court sits in family law does not deprive it of its inherent jurisdiction once a case is properly before it.[9] Thus, though a Family Court sitting in a dissolution proceeding is a court of limited jurisdiction, once the court acquires jurisdiction over the subject matter (including by stipulation to jurisdiction) it may bring to its aid the full equitable and legal powers with which, as a Superior Court, it is invested and which is necessary or appropriate to the discharge of its jurisdiction over that subject matter. In re Marriage of Davis, 68 Cal.App.3d 294, 137 Cal.Rptr. 265, 268 (1977).
In the instant case, the parties explicitly stipulated to the Family Court hearing "all matters regarding Thomas and ARSI." Given the fact that the fraud, conversion, and breach of fiduciary duty issues were then pending before the Family Court, it would appear that "all matters" included the tort causes of action. Further, California Rules of Court dictate that a party must explicitly reserve jurisdiction over a matter that is not to be included in a stipulation for judgment. California Rules of Court § 1223 (1995). Not only was no such reservation made, but neither Thomas nor ARSI raised lack of jurisdiction issues at the Family Court trial or in their trial and post-trial briefs. They should not be allowed to do so for the first time in the bankruptcy court. The appropriate place for such argument is the California Court of Appeals, although it appears that ARSI has chosen not to pursue this option.
For the reasons stated above, we conclude that the Family Court had jurisdiction over the tort causes of action that were the basis for the $11.5 million judgment against Thomas and ARSI and thus the judgment was not void ab initio.
b. Effect of the appeal
ARSI's second contention is that the Rooker-Feldman doctrine does not apply because the Family Court judgment is not from the highest state court and that because the judgment is on appeal to the state court of appeals, the judgment is not final. ARSI cites Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230 (9th Cir.1995) (as amended), for the proposition that in the Ninth Circuit, the Rooker-Feldman doctrine only applies to final state court judgments "rendered by the highest court of a state in which a decision could be had." Resolution Trust Corp., 43 F.3d at 1237 n. 5.
However, ARSI is incorrect in its assertion that Resolution Trust Corp. applies because Congress granted a specific exception to the RTC to remove a state court case to federal court subject to the strict limitation that there be a final unappealable judgment entered before its appointment. Id. at 1236. The Ninth Circuit held that "12 U.S.C. § 1441a(1)(3) gives the R.T.C. greater removal authority than that available to others" and, thus, it is not an undue burden to require that it be subject to certain strict limitations. Hellon & Associates, Inc. v. Phoenix Resort Corp., 958 F.2d 295, 299 (9th Cir.1992). Further, if the Ninth Circuit were to overrule the existing law established in Worldwide Church, which stated that the Rooker-Feldman doctrine applies even if the state court judgment is on appeal, it would have given the subject more discussion in Resolution Trust Corp. than the dicta in footnote five. See Resolution Trust Corp., 43 F.3d. at 1237, n. 5.
The Ninth Circuit law is clear that the Rooker-Feldman doctrine applies to judgments from any state court, regardless of whether the judgment is on appeal. Worldwide Church, 805 F.2d at 893. The Ninth Circuit specifically stated in Worldwide Church that "we agree with the Second and Fifth Circuits that the Feldman doctrine should apply to state judgments even though *29 state court appeals are not final." Id. In Dubinka, the Ninth Circuit held that the Rooker-Feldman doctrine "applies even when the state court judgment is not made by the highest state court." Dubinka, 23 F.3d at 221. If the Rooker-Feldman doctrine solely barred federal review of judgments which had been fully appealed through the state court system, it would foster a rivalry between federal and state courts by creating incentives for disappointed state court participants to forum-shop and choose the federal courts instead of appealing their cases to the states' appellate courts.
The Worldwide Church and Dubinka rulings are applicable to bankruptcy courts in the Ninth Circuit despite the peculiarity of California law[10] which denies issue preclusion effect to a California state court judgment which is pending on appeal. Minden v. City of Monte Sereno, 1996 WL 708373 (N.D.Cal. November 27, 1996); Dick v. Pacific Gas & Elec. Co., 1996 WL 163006 (N.D.Cal. March 12, 1996); Keenan, 201 B.R. at 263, 266-67; Morrow, 189 B.R. at 810-11. These holdings are consistent with the Rooker case, which held that:
If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication.

Rooker, 263 U.S. at 415, 44 S.Ct. at 150 (emphasis added).
ARSI claims that, notwithstanding a final judgment, the Rooker-Feldman doctrine does not bar a bankruptcy court from determining whether a state court judgment is void; i.e., not looking at the merits of the judgment. ARSI relies on Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), a United States Supreme Court case which stated that "this Court has held that a bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence." Id. at 305, 60 S.Ct. at 244. ARSI also relies on People of State of N.Y. ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947), for the proposition that the state of the forum has as least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the state where the judgment was rendered. Id. at 615, 67 S.Ct. at 906.
ARSI's argument is without merit because, first, the Halvey quote that it utilizes, if cited in full, does not deal with the denial of a claim, but rather with the authority of a state to deny full faith and credit to a judgment of another state. Id. This is clearly not the instant case. Second, the Pepper case does not apply because it dealt with the equitable subordination of a claim as opposed to estimation of a claim, and the Rooker-Feldman doctrine was not in existence as Feldman had not yet been decided.
If a federal bankruptcy court were to intervene in a state court judgment, it could only do so if the state proceedings were void ab initio; a void judgment being one which from its inception was a complete nullity and without legal effect. In re James, 940 F.2d 46, 52 (3rd Cir.1991). The James court correctly noted that in the interest of finality, the concept of void judgments is to be narrowly construed. Id. In fact, the Rooker-Feldman doctrine applies even where a state court judgment may be in error. In re Highway Truck Drivers and Helpers, Teamsters Local No. 107, 100 B.R. 209, 216 (Bankr.E.D.Pa.1989).
In the instant case, the Family Court judgment was not a complete nullity and without legal effect. Until it is reversed by the California court of appeals, for the purposes of the Rooker-Feldman doctrine, it is a valid final judgment.
*30 Based on the foregoing reasons, we conclude that the Rooker-Feldman doctrine precludes the bankruptcy court from disallowing Catherine's claims against ARSI based on the Family Court judgment.
2. Even if the Rooker-Feldman doctrine did not apply, the bankruptcy court should not have estimated Catherine's claim as $0
ARSI contends that the $11.5 million claim against it should be estimated as $0 because the judgment is both contingent and unliquidated due to the fact that California law does not accord a judgment issue-preclusive effect when it is pending on appeal. However, as the Family Court judgment is a valid and final judgment for Rooker-Feldman doctrine purposes despite being on appeal, there is both a legal and factual basis for ARSI's liability on the Family Court judgment, and a § 502(c) estimation of the claims would be improper.
Section 502(c) states in pertinent part:
There shall be estimated for purpose of allowance under this section(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.
Resorting to § 502(c) is only appropriate when the claim is either contingent or unliquidated. In re Rhead, 179 B.R. 169, 172 (Bankr.D.Ariz.1995). If the debt does not fit this definition, estimation is inappropriate. Id. The Code does not define the terms contingent or unliquidated but case law has provided some definition of the terms. In re Nicholes, 184 B.R. 82, 88 (9th Cir. BAP 1995). It has been found that if all events giving rise to liability occurred prior to the filing of the bankruptcy petition, the claim is not contingent. Id.; see also In re Fostvedt, 823 F.2d 305, 306 (9th Cir.1987). The Ninth Circuit Bankruptcy Appellate Panel has held that "whether a debt is liquidated or not . . . does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation." In re Loya, 123 B.R. 338, 340 (9th Cir. BAP 1991).
In Keenan, a case with strikingly similar facts to this one, the bankruptcy court correctly stated that:
This court recognizes that California courts would deny issue preclusion to a California state court judgment pending on appeal. But the inapplicability of issue preclusion does not make a claim based on a trial court verdict either contingent or unliquidated.
Keenan, 201 B.R. at 264.
The Keenan court then went on to find that the state court case proceeded to judgment based on a jury verdict, and that as of the date of the filing of the bankruptcy, the judgment was readily calculable; therefore the claim was liquidated. Id. at 266. It also found that a readily calculable claim remains liquidated regardless of whether it is disputed. The bankruptcy court found support for this proposition from the Ninth Circuit BAP, which previously held that "a disputed debt which is capable of ready determination is liquidated." Loya, 123 B.R. at 340-41. Finally, the bankruptcy court concluded that because the creditor's claim proceeded to judgment in state court, the claim was neither contingent nor unliquidated despite the fact that the debtor appealed the judgment. Keenan, 201 B.R. at 266.
Analogous to the reasoning in Keenan, Catherine's claim in the instant case is not contingent just because the Family Court judgment is on appeal. Despite the quirk of California law regarding issue preclusion, the Ninth Circuit has held that a judgment is final for the purposes of the Rooker-Feldman doctrine even if it is on appeal. Worldwide Church, 805 F.2d at 893 n. 3. Further, the actions giving rise to the liability, the instance of fraud and the resulting Family Court judgment, both occurred pre-petition and, thus, fall squarely into the Fostvedt definition. Additionally, the amount of the claim is not unliquidated because, as of the date of the filing of the chapter 11 case, it was easily subject to ready determination the Family Court had already determined the amount of the claim to be $11.5 million. As such, the bankruptcy court correctly stated that even "if § 502(c) were applicable to this case and the court was obligated to *31 estimate the Family Court claim, the court would estimate it in the amount of the state court judgment." Audre, 202 B.R. at 493.
B. Whether The Bankruptcy Court Erred in Denying The Motion For Summary Judgment As To ARSI
The core of ARSI's argument in its appeal of the denial of its motion for summary judgment is that the bankruptcy court was not precluded from addressing the merits of its motion under Rooker-Feldman and that, if it did look at the merits, it should have found that the Family Court claims were void and, thus, no genuine issue of material fact existed. ARSI claims that "the family [court] claims must be disallowed on summary judgment because, based upon the undisputed facts, [Catherine] is not entitled to a claim as a matter of law as the family court judgment is void for lack of subject matter jurisdiction." However, the bankruptcy court did not need to address the merits of the summary judgment motion as it was precluded from doing so under the Rooker-Feldman doctrine. As the bankruptcy court correctly stated, in this case "summary judgment is [being used as] a procedural mechanism for seeking a ruling on the objection to claim which is in the form of a motion to disallow." ARSI's own words in its memorandum of points and authorities in support of its motion for summary judgment significantly bolster this contention. As such, the same reasoning and analysis that demonstrated that the Rooker-Feldman doctrine precludes the bankruptcy court from hearing the motion to disallow or estimate the claims as $0 applies equally here.
C. In The Creditors' Cross-Appeal, Whether The Bankruptcy Court Was Clearly Erroneous In Granting The Motion To Disallow The Family Court Claim As To Audre
The creditors seek to have us determine that their claim against Audre is valid or otherwise remand the case to the bankruptcy court for reconsideration of whether Audre is the alter ego of ARSI. They argue that the bankruptcy court abused its discretion in granting the motion to disallow the Family Court claim as to Audre and in denying Catherine's motion for reconsideration of that issue.
The bankruptcy court held that Audre was not a party to the Family Court litigation nor had any judgment been entered against it. Audre, 202 B.R. at 498. It also found that Audre was an independent entity from ARSI despite the creditors' arguments regarding it being an alter ego. Specifically, the bankruptcy court stated that the creditors have "argued that Audre was somehow the alter ego of ARSI, but [they] still [have] made no showing to support that bald assertion." Id. Thus, it granted Audre's motion to disallow the claims against it and denied Catherine's motion for reconsideration.
1. The bankruptcy court was not clearly erroneous in finding that Audre was not the alter ego of ARSI
It is generally held that the separate corporate existence of a subsidiary will be recognized absent illegitimate purposes unless: (a) the business transactions, property, employees, bank and other accounts and records of the corporation are intermingled; (b) the formalities of separate corporate procedures for each corporation are not observed; (c) the corporation is inadequately financed as a separate unit from the point of view of meeting its normal obligations; (d) the respective enterprises are not held out to the public as separate enterprises; and (e) the policies of the corporation are not directed to its own interests primarily, but rather to those of the other corporation. H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS § 148 at 355-56 (3rd ed.1983).
The creditors attempted to make an alter ego showing by demonstrating that Thomas was the CEO of both ARSI and Audre, that the two companies had merged, that the two companies used the same facility, that the bulk of the corporate assets belonged to Audre, and that both companies had utilized the same counsel in the bankruptcy proceedings. They also cite to ARSI's 10-K filing for the 1993 fiscal year which stated that "ARSI is a British Columbia Company whose entire business activities and operations are conducted *32 through its wholly owned subsidiary, Audre."
While the creditors may have demonstrated that Audre and ARSI worked closely together and that some of their employees and activities worked for and benefited both corporations, these facts, in and of themselves, are not enough to prove that the two companies were in effect one. The creditors submitted no financial statements for either Audre or ARSI, though ARSI is publicly traded and makes its financial records available to the public. Neither did they show that the corporate formalities were not being observed, that ARSI was inadequately financed, or that Audre's policies were not directed to its own interests. They did not demonstrate that corporate finances were being intermingled or that a joint bank account existed.
Thus, the bankruptcy court did not make a clear error of judgment in finding that the creditors had failed to make an adequate showing to pierce the corporate veil. We hold that the bankruptcy court did not commit clear error in finding that Audre was not the alter ego of ARSI.
2. The bankruptcy court did not abuse its discretion in denying Catherine's motions for reconsideration
The standard by which a motion for reconsideration will be judged is set forth in Federal Rule of Civil Procedure 60. Rule 9024, incorporating Federal Rule of Civil Procedure 60, states in pertinent part that "the court may relieve a party . . . from a final judgment . . . for: (1) mistake, inadvertence, surprise, or excusable neglect; [and] (2) newly discovered evidence which by all due diligence could not have been discovered in time to move for a new trial."
Catherine asserts that the bankruptcy court's denial of her motions for reconsideration was an abuse of discretion. She contends that during the course of the bankruptcy proceedings her counsel withdrew and she joined in another creditor's opposition to the motion to disallow or estimate the claims as $0. This opposition mistakenly asserted that the Audre claim was not before the bankruptcy court and thus the issue of Audre's liability was not addressed until the hearing on the summary judgment motion. Catherine concludes that her joinder in the creditor's opposition constituted excusable neglect which justified reconsideration. Thus, she has asked us to remand and provide her with the opportunity to prove that Audre and ARSI should be jointly liable for her claim.
We will not remand, because the bankruptcy court appears to have taken all of Catherine's facts into consideration at both the summary judgment and motion for reconsideration hearings. The facts that she asserts were not new to her and any mistake or excusable neglect could have, or should have, been cured in one of her two opportunities to present evidence to the bankruptcy court. The bankruptcy court did not abuse its discretion in denying Catherine's motions for reconsideration.

V. CONCLUSION
The Rooker-Feldman doctrine precludes the bankruptcy court from disallowing the Family Court claim or estimating it as $0. A valid Family Court judgment was rendered by a court of general jurisdiction acting within the mandate of the California Family Code and under a stipulation to jurisdiction by the parties. The fact that the Family Court judgment is on appeal to the California Court of Appeals does not make the Family Court judgment not final for the purposes of the Rooker-Feldman doctrine.
Even if the Rooker-Feldman Doctrine did not apply, the claims should not have been disallowed or estimated as $0. The bankruptcy court had a legal and factual basis for finding the debtors liable on the Family Court judgment. ARSI is further precluded from a § 502(c) estimation because the judgment is not contingent simply because it is on appeal. It is not unliquidated because the amount of the judgment has already been clearly determined by the Family Court. In addition, refusing to estimate the claim will not unduly delay the chapter 11 case. We note, however, that even if the bankruptcy court were to estimate the Family Court claim, it should have done so in the amount of the Family Court judgment.
*33 The Rooker-Feldman doctrine also precludes the bankruptcy court from granting the motion for summary judgment as this is equally as much of a collateral attack on a state court judgment as is the motion to disallow. The same reasons why the Rooker-Feldman doctrine applies there are of equal effect here.
The bankruptcy court was not clearly erroneous in granting the motion to disallow or estimate as $0 as to Audre. The creditors did not make an adequate alter ego showing to pierce the corporate veil.
The denial of Catherine's motion for reconsideration was not an abuse of discretion. There is no showing that the bankruptcy court did not take all of her evidence and arguments into consideration in making its decision.
Accordingly, we AFFIRM the bankruptcy court's denial of the motion to disallow or estimate the claims as $0 as to ARSI. We AFFIRM the bankruptcy court's denial of the motion for summary judgment as to ARSI. We also AFFIRM the bankruptcy court's granting of the motion to disallow the claims as to Audre.
MONTALI, Bankruptcy Judge, concurring:
While I concur in the result the majority reaches and agree with virtually all of its reasoning, I write separately to express my disagreement with one sentence at the end of Section IV(A)(1)(a):
". . . we conclude that the Family Court had jurisdiction over the tort causes of action that were the basis for the $11.5 million judgment against Thomas and ARSI and thus the judgment was not void ab initio." (Emphasis added.)
Under Rooker-Feldman and 28 U.S.C. § 1257, federal courts (other than the United States Supreme Court) may not exercise appellate jurisdiction over state court decisions. Appellants contend and the majority acknowledges that exceptions to the rule against collateral attacks of state court judgments do exist when the state court judgment is clearly and unquestionably "void ab initio". In stating this exception, appellants rely primarily upon four decisions: In re James, 940 F.2d 46 (3rd Cir.1991); Gonzales v. Parks, 830 F.2d 1033 (9th Cir.1987); Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); and Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).
James reversed a district court's decision to vacate a state court judgment on the perception that the state court judgment was erroneously decided on the merits, and not on the issue of whether the state court had jurisdiction over the subject matter. Its reference to the "void ab initio" principle is dicta at best. Both Kalb, and more recently Gonzales which relies on it, stand for the proposition that when matters are within the exclusive jurisdiction of the bankruptcy court, a state court judgment in contravention of that exclusive jurisdiction is void and can be set aside. Since the judgment of the Family Court did not encroach upon exclusive federal jurisdiction, the foregoing exception to Rooker-Feldman is not available.
That leaves Heiser, where the Supreme Court reversed a Tenth Circuit holding that a bankruptcy court could go beyond a prior adjudication of the validity of a state court judgment and decide for itself whether the questions previously litigated and decided were meritorious and whether a claim in bankruptcy could be rejected based upon a judgment procured by fraud. In reaching its decision, the court rejected the idea that a bankruptcy court could reexamine issues determined by the judgment that was being challenged. The charge of fraud had been rejected by the court in which the judgment was rendered and could not be relitigated in the bankruptcy court.
In the present case, ARSI's challenge to the jurisdiction of the Family Court is viable as its appeal rights have not been exhausted. Further, it is apparent that a legitimate question exists under state law as to the Family Court's subject matter jurisdiction. We have been presented with well-reasoned and nonfrivolous arguments from both sides. Those arguments call for a determination solely of state law and should be decided in the state court. Imagine the confusion that will follow if the state court on appeal finds *34 that the Family Court lacked jurisdiction over ARSI when this court has ruled as a matter of law that the Family Court had jurisdiction!
In determining that the Family Court had jurisdiction, the majority makes the very decision we are told not to make. In doing so, it ignores the teachings of the Ninth Circuit in a case that is nearly old as Rooker. "(W)here the facts which determine jurisdiction are in dispute, the court in which the action is pending has the power to decide in favor of its jurisdiction upon the controverted facts. Such decision, if erroneous, is binding except on appeal." Lambert v. Central Bank of Oakland, 85 F.2d 954, 958 (9th Cir.1936) (emphasis added) (holding that a federal court cannot exercise jurisdiction over an attack on a state court judgment even where the parties assert that the state court lacked jurisdiction to issue the judgment initially). See also Merrell v. U.S., 140 F.2d 602, 607 (10th Cir.1944) ("[T]he [state court] adjudication is invulnerable to collateral attack in a Federal court exercising concurrent jurisdiction, unless from the fact of the record it plainly appears that the adjudication was wholly unauthorized by the statute which conferred jurisdiction.") (emphasis added).
A more appropriate statement of our decision would be: "In the instant case we cannot say that it plainly appears the Family Court judgment was void ab initio. Until that judgment is reversed by the California Court of Appeal, we will treat it as a valid, final judgment."
NOTES
[1] Hon. Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.
[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules XXXX-XXXX.
[3] Audre initially became a partially-owned subsidiary of ARSI in April of 1987 through an exchange of shares with ARSI [then known as Ceaser Resources Ltd.], whereby holders of 88% of the shares of Audre exchanged their stock for the stock of Ceaser. Ceaser was incorporated in 1983 under the Company Act in the Province of British Columbia, Canada. Concurrent with the consummation of the Share Purchase Agreement in April of 1987, Ceaser changed its name to ARSI. The company completed the acquisition of 100% of Audre on July 6, 1990.
[4] See supra n. 3.
[5] ARSI's appeal (BAP No. SC-96-2045-ROMo) of the bankruptcy court's denial of ARSI's motion to subordinate the Family Court judgment was dismissed by the BAP on August 20, 1997.
[6] Catherine, Steven Sanford, Steven Greenberg, Artificial Intelligence Corp., ARSTK, Inc., Ronald K. Van Wert, a Professional Corporation, and Steven E. Briggs each filed proofs of claim in the ARSI and Audre bankruptcy cases, which represented each individual's interest in the Family Court judgment. Catherine, Steven Briggs, and Ronald K. Van Wert, a Professional Corporation, are named appellees/cross-appellants in this appeal. ARSTK, Steven Greenberg, Steven Sanford, and Artificial Intelligence Corp. filed a separate appeal to the BAP, which was dismissed on August 6, 1997 (BAP No. SC-96-2040).
[7] The ARSI and Audre bankruptcy cases are being jointly administered but have not been consolidated.
[8] See CAL.FAM.CODE § 2010(e), (f) (West 1995) (governing the Family Court's jurisdiction over the settlement of the property rights of the parties and the award of attorney's fees); California Rules of Court § 1217 (1995) (prescribing the Family Court's continuing jurisdiction over the parties in all subsequent proceedings).
[9] The Supreme Court of California has held that "it is well settled that if one department of a court exercises authority in a matter which might properly be heard in another, the action constitutes at most an irregularity and does not affect the jurisdiction." Williams v. Superior Court in and for Los Angeles County, 14 Cal.2d 656, 96 P.2d 334 (1939).
[10] Under state law, California state court judgments are not final until the period during which an aggrieved party may file an appeal has expired, or, in the cases of appeal, the judgment has been affirmed and the case remitted. People ex rel. Gow v. Mitchell Bros.' Santa Ana Theater, 101 Cal.App.3d 296, 161 Cal.Rptr. 562 (1980).